**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BURHAAN SALEH,<br><br>    **Plaintiff,**<br><br>    v.<br><br>VOLVO CAR USA, LLC,<br><br>    **Defendant.** | Civil Action No. 25-13300 (ES) (MAH)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Volvo Car USA, LLC's ("Volvo" or "Defendant") motion to dismiss, (D.E. No. 11 ("Mot."); D.E. No. 11-1 ("Mov. Br.")), Burhaan Saleh's ("Plaintiff") complaint, (D.E. No. 1 ("Compl.")). The Court resolves Defendant's motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, that motion is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** *without prejudice*.[1]

## I.  BACKGROUND

### A.  Factual Allegations

In June of 2022, Plaintiff leased a 2020 Volvo XC60 T8 Polestar Engineered Sport Utility 4D. (Compl. ¶ 20). In July of 2024, he purchased that same vehicle. (*Id*. ¶ 21). Plaintiff alleges that he "decided on the XC60 because he believed it was a high-quality vehicle after a salesman convinced him that the vehicle was safe, highly reliable and came with great technological features." (*Id*. ¶ 24). Defendant sold the vehicle "with written express warranties[,]" provided to

---

[1]  Because the Court decides Defendant's Motion on the basis of Article III standing, it does not address its arguments relating to constitutional or prudential mootness or ripeness. (*See generally* Mov. Br. at 9–17).

the buyer after the purchase is completed. (*Id*. ¶¶ 36–37).

Plaintiff alleges that, on February 6, 2024—five months before Plaintiff purchased his vehicle—Defendant first became aware that the high-voltage batteries in several of its plug-in hybrid models "may experience an internal short circuit, potentially leading to 'thermal runaway,' better known as a fire risk." (*Id*. ¶ 17). Defendant escalated the issue to its "Critical Concern Action Process." (*Id*. ¶ 38).[2] On March 20, 2025, Defendant—who manufactured, marketed, advertised, sold, warranted, and serviced Plaintiff's vehicle—recalled "nearly 73,000 plug-in hybrids worldwide," including Plaintiff's XC60 and 7,437 other hybrid vehicles in the United States. (*Id*. ¶¶ 3–4). The recall "include[d] a thorough inspection to identify any cell deviations within the battery module, a software update to enhance battery module monitoring and, in case that issues are found, a replacement of the module." (*Id*. ¶ 20). Plaintiff alleges that he "has never been told of any recalls or defects related to the battery" and "was never informed that the high – voltage battery may experience a short circuit within the battery module when the battery is fully charged, and the vehicle is parked." (*Id*. ¶ 25). Plaintiff thus brings this class action on behalf of "all similarly situated persons who purchased or leased certain Volvo plug-in hybrid models that were recalled and manufactured from the years 2020 through 2022[,]" which Plaintiff refers to as the "Class Vehicles." (*Id*. ¶ 2).[3]

---

[2]     Plaintiff does not describe this process or allege when Defendant escalated the issue. (*See generally* Compl.).

[3]     Plaintiff defines the "Nationwide Class" as "[a]ll persons in the United States who purchased or leased certain recalled Volvo Models: 2020-2021 S90, 2020-2022 S60, V60, XC60, XC90, and 2022 V90 plug-in hybrid vehicles." (Compl. ¶ 44). The "California Subclass" is "[a]ll persons in California who purchased or leased certain recalled Volvo Models: 2020-2021 S90, 2020-2022 S60, V60, XC60, XC90, and 2022 V90 plug-in hybrid vehicles." (*Id*.). Together, the Nationwide Class and California Subclass comprise "the Class." The Court makes no determination regarding the appropriateness of class certification at this stage in the litigation—particularly given that, although Plaintiff makes some allegations regarding the propriety of class certification in his Complaint, (*see* Compl. ¶¶ 44–57), Plaintiff has filed no motion for class certification and the parties have not briefed the issue. *See Neale v. Volvo Cars of N. Am.*, No. 10-4407, 2011 WL 1362470, at *2–3 (D.N.J. Apr. 11, 2011) ("Here, where the case is less than six months old and there has been no discovery, nor even a motion for class certification, the issue is simply not ripe

Plaintiff further claims that "[s]ince Defendants' Recall, [he] no longer uses his vehicles' [sic] charging capability and operates it by gas only," because "The National Highway Traffic Safety Administration ["NHTSA"] advised vehicle owners to stop charging their vehicles until a remedy was available." (*Id*. ¶ 26). He alleges that he attempted to have his battery repaired but was told "there was no fix at that time"—although Plaintiff does not indicate when he attempted to have the battery repaired or if his vehicle experienced a short circuit. (*Id*. ¶ 27). Ultimately, Plaintiff claims that he has been "burdened with a vehicle that has been devalued by Defendants' actions because the value of a car with a known history of a defective battery and a potential fire hazard is worth much less than a car with properly working battery module, or at least not having a history of defects with risks of the car catching on fire." (D.E. No. 29).

Plaintiff alleges four causes of action based on this conduct: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) "fraud by omission/concealment"; and (iv) unjust enrichment.[4] (Compl. ¶¶ 57– 94 & 110–117). Plaintiff further alleges two causes of action on behalf of the California subclass alone: (i) "[v]iolation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq."; and (ii) "[v]iolation of the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500, et seq." (*Id.* ¶¶ 95–109).

---

for this Court to consider. . . . There is no question but that the Court will need to conduct a rigorous analysis . . . at the appropriate time, but to do so now would be premature.").

[4]      Although these are each state law claims, Plaintiff does not make clear whether he brings them under New Jersey law (the law of the forum state and the state where Defendant operates its principal place of business), or instead under California law (where Plaintiff is domiciled). In their briefs, Plaintiff and Defendant cite caselaw from both jurisdictions; neither party makes any argument as to which law properly applies to Plaintiff's state law claims brought on behalf of the Nationwide Class. (*See generally* Mov. Br.; Opp. Br.; Reply Br.). Because this Court limits its decision to the threshold jurisdictional issue of standing, *see infra*, it does not reach the choice of law question at this early stage of the litigation. *See Cilluffo v. Subaru of Am., Inc.*, No. 23-1897, 2024 WL 1270814, at *4 (D.N.J. Mar. 26, 2024) ("The Court declines to make any choice-of-law determinations at this stage of the litigation because we find such an analysis to be premature."). Should the Court consider Plaintiff's claims in the future, the Court expects the parties to thoroughly brief any choice of law issues relevant to the case at bar.

B.      **Procedural History**

Plaintiff filed this action against Defendant on July 14, 2025. (*See generally* Compl.).[5] On September 15, 2025, Defendant filed its motion to dismiss. (*See* Mot.). On October 6, 2025, Plaintiff filed a brief in opposition, (*see* D.E. No. 13 ("Opp. Br.")); on October 14, 2025, Defendant filed a reply, (*see* D.E. No. 14 ("Reply Br.")). The Motion is fully briefed.

II.    **LEGAL STANDARD**

A.      **Rule 12(b)(1)**

A motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)) (internal quotations and alterations omitted). The standard for evaluating a motion under Rule 12(b)(1) is the same as that for a motion brought under Rule 12(b)(6).

B.      **Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). A court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his

---

[5]      Plaintiff initially named Volvo Car Corporation as an additional defendant, but voluntarily dismissed that entity from the case on August 11, 2025. (*See* D.E. Nos. 5 & 6).

4

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan*, 478 U.S. at 286).  Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556).  "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action.  *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

Moreover, "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).[6]

---

[6]     While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL

### C.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement concerning allegations of fraud. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012). Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he law does not require specificity just for specificity's sake"; rather, "[t]he level of particularity required is sufficient details to put [d]efendants on notice of the 'precise misconduct with which they are charged.'" *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011) (quoting *Franulovic v. Coca Cola Co.*, No. 07-0539, 2007 WL 3166953, at *11 (D.N.J. Oct. 25, 2007)). In other words, to satisfy Rule 9(b)'s specificity requirement, "the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss." *Id.* (quoting *Zebersky v. Bed Bath & Beyond, Inc.*, No. 06-1735, 2006 WL 3454993, at *4 (D.N.J. Nov. 29, 2006)). The Third Circuit has advised that, "at a minimum," a plaintiff must support allegations of fraud "with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1422); *see also United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016).

---

3336421, at *2 (D.N.J. July 25, 2019)). The Court considers both of Defendant's submitted exhibits, (*see* D.E. No. 11-3 ("Exhibit 1" or "Ex. 1"); D.E. No. 11-4 ("Exhibit 2" or "Ex. 2")), as items incorporated by reference in the Complaint and subject to judicial notice. *See Vanderklok v. U.S.*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (holding that "information [that] is publicly available on government websites" is subject to "judicial notice.")).

## III.   DISCUSSION

Defendant argues that this Court should dismiss the entire Complaint for lack of Article III standing because Plaintiff has failed to plead an injury in fact.  (Mov. Br. at 7–9).  To establish standing, a plaintiff must allege that he or she has "suffered an injury in fact–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484 (3d Cir. 1998) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  A plaintiff must also show "a causal connection between the injury and the conduct complained of– the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Lujan*, 504 U.S. at 560 (alterations in original) (internal quotations omitted).  In addition, a plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 561 (internal quotations omitted).  Finally, a plaintiff must assert "her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."  *Powers v. Ohio*, 499 U.S. 400, 410 (1991).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.

As best the Court can discern, Plaintiff makes four potential arguments to establish Article III standing: (i) because Plaintiff purchased a vehicle covered by Defendant's recall, he has suffered a direct injury; (ii) because "[t]he National Highway Traffic Safety Administration advised vehicle owners to stop charging their vehicles until a remedy was available[,]" he "no longer uses his vehicles' charging capability and operates it by gas only[,]," (Compl. ¶ 26), which costs him "more money in fuel costs[,]" (*id.* ¶ 28); (iii) even assuming Defendant offered an effective fix, Plaintiff remains "burdened with a vehicle that has been devalued by Defendants'

7

actions because the value of a car with a known history of a defective battery and a potential fire hazard is worth much less than a car with properly working battery module[,]" (*id*. ¶ 9); and (iv) Plaintiff estimates that the free repair and inspection options offered by Defendant "will cost [him] hours of his time[,]" (*id*. ¶ 20).  The Court considers each in turn.

### A.      Injury to Plaintiff's Vehicle

The Court first considers whether Plaintiff has standing to sue by virtue of injury to his particular vehicle.  Defendant argues that Plaintiff does not plead facts showing that **his** vehicle has a defect, and instead relies solely on the recall report, which "states that *just 5%* of recalled vehicles *may* have the defect." (Mov. Br. at 8 (citing Ex. 1 at 1)).  Defendant relies on *Singletary v. Kia Am., Inc.*, another case brought by Plaintiff's counsel, where the court rejected similar "assertions of injury following a vehicle recall because the plaintiff did not allege her vehicle had manifested any issues, had not availed herself of the recall, and the recall report estimated only a small percentage of vehicles had the defect." (*Id*. at 9 (citing 2024 WL 1431222, at *1–3)).[7]  In Opposition, Plaintiff argues that he **did** "plead that his vehicle has a defect[,]" because "he purchased a recalled 2020 Volvo XC60 equipped with a defective high-voltage battery." (Opp. Br. at 6 (citing Compl. ¶¶ 11–13)).  To that, Defendant replies that "Plaintiff does not dispute that to plead standing he must allege *facts* plausibly showing *his* vehicle is defective" and "'[t]he mere presence of a recall does not establish harm, economic or otherwise.'" (Reply Br. at 1 (quoting *Cain v. Johnson Health Tech. N. Am., Inc.*, 2023 U.S. Dist. LEXIS 109026, at *16 (C.D. Cal. June 23, 2023))).

Defendant makes the better argument: nowhere in the Complaint does Plaintiff allege that

---

[7]      Although not binding, the Court finds *Singletary*'s logic persuasive, and so occasionally cites to it herein. *See generally* 2024 WL 1431222.

the battery in *his* vehicle suffered from a defect, and the mere fact that Defendant recalled Plaintiff's vehicle does not alone suffice to establish Article III standing. Plaintiff cites to Paragraphs 11 through 13 of his Complaint to argue that his particular vehicle suffers from a defect, (*see* Opp. Br. at 6), but those paragraphs do not support his contention. Paragraph 11 simply alleges that Plaintiff "purchased and currently owns a 2020 Volvo XC60 T8 Polestar Engineered Sport Utility 4D[,]" and Paragraphs 12 and 13 allege that Defendant is a "Delaware Limited Liability Company" and that Defendant Volvo Car Corporation (since dismissed from the case) is a Swedish Corporation. (*See* Compl. ¶¶ 11–13; Reply Br. at 1–2); *see also Janowski v. City of North Wildwood*, No. 16-4464, 2017 WL 1821078, at *11 (D.N.J. May 5, 2017) ("Plaintiff cannot amend or supplement his pleadings through his opposition brief.") (citing *Zimmerman*, 836 F.2d at 181). In fact, Plaintiff's allegations appear virtually identical to other claims rejected by courts in this Circuit and others:

> Katz appears to allege only the following: that his wife ***purchased a vehicle that was later recalled***; that the recall, consisting of installing a trailer hitch as an added layer of protection, inconvenienced him; that the repairs do not adequately remedy the alleged defect in the vehicle's design; that individuals somewhere in the country were harmed by the vehicle's defect prior to the recall; and that he is entitled to $300,000 in damages.

*Katz v. Fiat/Chrysler Automobiles*, No. 15-0036, 2015 WL 2452419, at *2 (M.D. Pa. May 21, 2015). Here, as in *Katz*, Plaintiff has pled no facts suggesting that "the claimed safety issues were [ ] manifest in [his] vehicle, [or] that he []ever suffered any physical harm resulting from the alleged vehicle's defect." *Id*.

### B.    Fuel Costs

Plaintiff further points to the NHTSA's advisory that owners "stop charging their cars until a remedy was available." (Compl. ¶ 26). Because of this warning, Plaintiff alleges that he no

longer uses his car's charging capability and instead uses only gas. (*Id*.). This costs him more in fuel and, Plaintiff says, deprives him of the benefit of his bargain: a vehicle that functions safely as a hybrid. (*Id*. ¶ 28). Defendant argues, on the other hand, that it has made a remedy available in the form of a free recall and repair, and Plaintiff has simply failed to take advantage of that opportunity—thereby causing his own harm. (*See* Mov. Br. at 11 (citing *Tarsio v. FCA US LLC*, No. 22-9993, 2024 WL 1514211 (S.D.N.Y. Apr. 8, 2024) ("[I]f the defendant provides an adequate remedy for the problem, the plaintiff has not suffered an injury. . . . Here, Defendant has provided exactly such a refund through the NHTSA-approved recall and repair."))).

The Court agrees. Plaintiff cannot claim injury while refusing to avail himself of the recall based on bare speculation that it may not effectively repair his vehicle; Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see also In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 276 (E.D. Pa. 2012) ("To find that these plaintiffs have been injured with respect to their purchases of recalled products, the Court would have to assume that if the plaintiffs requested a refund, they would be denied one, or that the refund offered would be inadequate to make them whole. When such speculation is required as to the causal link between the behavior of a defendant and an injury of the plaintiff, no standing exists." (citing *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012))); *Romsted v. Rutgers State Univ. of New Jersey*, No. 12-5588, 2013 WL 3964516, at *4 (D.N.J. July 31, 2013) ("[A]ny injury that Plaintiffs incurred is self-inflicted harm not fairly traceable to Defendants." (citation modified)). In other words, to the extent Plaintiff claims injury based on the fact that he continues to refrain from charging his vehicle and only fills

it with gas—despite that a repair has now been made available—no standing exists.[8]

### C.     Depreciation

The Court next considers Plaintiff's argument that, even assuming Defendant offered an effective fix,[9] he remains "burdened with a vehicle that has been devalued by Defendants' actions because the value of a car with a known history of a defective battery and a potential fire hazard is worth much less than a car with properly working battery module." (*Id*. ¶ 9).  In support of this claim, Plaintiff cites to the Kelly Blue Book, which represents that "new cars depreciate about 30% over the first 2 years, and continue to depreciate 8-12% each year after that." (*Id*. ¶ 31).  He argues that his vehicle depreciated 25% from 2024 to 2025, which "supports a strong inference that Plaintiff's vehicle and those owned by the Class have depreciated at an exaggerated rate as a result of the [r]ecall." (*Id*. ¶ 33).

Crucially, however, Plaintiff's offered statistic that "new cars depreciate about 30% over the first 2 years, and continue to depreciate 8-12% each year after that" is not specific to the XC60, or even to Volvos in general.  Plaintiff has not pled, for instance, that the model year of his XC60 vehicle typically depreciates at that average rate.  To be sure, if adequately plead, an accelerated depreciation in the value of Plaintiff's vehicle may suffice to establish Article III standing.  Here,

---

[8]     Perhaps Plaintiff has standing based on economic injury suffered during the period in between when the NHTSA issued its warning and when Defendant's repair became available.  However, Plaintiff has not pled sufficient facts for the Court to make that determination here: Plaintiff does not allege when the NHTSA issued its warning, when (or by whom) he was told that a repair was not available, or when Defendant made its repair available. (*See generally* Compl.).  Neither is it obvious to the Court that any injury suffered because of an advisory issued by non-party NHTSA is fairly traceable to the Defendant's conduct. *See  In re Schering Plough Corp.,* 678 F.3d 235, 247 (3d Cir.2012) ("[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.").  To the extent Plaintiff intended to claim that he suffered such an injury, he shall amend his Complaint to provide adequate factual detail for the Court to evaluate that claim.

[9]     Defendant argues that "Plaintiff's bald speculation that the recall may be 'inadequate' is insufficient." (Mov. Br. at 12 (first citing Compl. ¶¶ 29, 42; then *Sugasawara*, 2019 WL 3945105, at *5 (rejecting "conclusory and speculative" "allegation that Ford's proffered remedy is ineffectual"); *Hadley*, 624 F. App'x at 380 ("[P]laintiffs' assertion that the ORC Module repair may not be effective" was "a hypothetical possibility" not "an actual or imminent injury"))).

however, "Plaintiff fails to . . . establish . . . financial harm beyond a mere generalization[,]" and cites to no cases for the proposition that a general statistic regarding all vehicles in the world can establish the existence of a particularized injury. *See Gibriano v. Eisai, Inc.*, No. 21-19937, 2024 WL 1831546, at *5 (D.N.J. Mar. 31, 2024), *appeal dismissed*, No. 24-1745, 2025 WL 1202527 (3d Cir. Mar. 3, 2025). Plaintiff has thus pled no facts from which the Court can determine that Plaintiff's specific vehicle has depreciated at a rate any different from the rate it ***would*** have depreciated had the defect never existed. *Chan v. Daimler AG*, No. 11-5391 JLL, 2012 WL 5827448, at *8–9 (D.N.J. Nov. 9, 2012) (holding that plaintiffs had not "alleged sufficient facts to support an inference that their vehicles diminished in value, or that any diminution in value ***was caused by the alleged engine defects***" and that "there must be a factual predicate upon which this Court may draw the plausible inference that Plaintiffs' vehicles did, in fact, diminish in value ***as a result of the allegedly defective engines***"); *contra Jamal v. Ally Fin., Inc.*, 24-0894, 2024 WL 5232926 (D.N.J. Dec. 27, 2024) (holding that plaintiffs had alleged damages "concrete enough to determine standing has been met" when they alleged an "accelerat[ion] [of] the depreciation of their existing vehicle of approximately $20,000.00 (based on IRS Mileage standards)"). Even if he had done so, Plaintiff has not alleged facts suggesting whether Defendant's proposed recall fix would bring that depreciation rate back to "average" levels. As the Court noted in Section III(B), Plaintiff cannot manufacture standing by refusing to avail himself of a proffered repair that would nullify his damages. *See, e.g.*, *Tarsio v. FCA US LLC*, 2024 WL 1514211 at *4. In other words, absent bald speculation, this Court has no mechanism to determine whether there exists any causal relationship whatsoever between the alleged depreciation in value of Plaintiff's vehicle and Defendant's recall. Because it is possible Plaintiff could allege additional facts to establish standing based on his vehicle's depreciation in value, however, the Court grants Plaintiff leave to

amend.

### D.      Cost in Time to Repair the Vehicle

Even assuming that time spent bringing in a car for repair establishes a sufficient injury for the purposes of Article III, Plaintiff's Complaint is ambiguous at best on this score.  He alleges that the free repair and inspection options offered by Defendant "***will*** cost [him] hours of his time"—presumably suggesting that Plaintiff has not yet availed himself of those opportunities or suffered any loss of time as of filing this lawsuit.  (Compl. ¶ 20).  Plaintiff's simultaneous allegation that "attempted to have his recalled Battery repaired but was told there was not a fix at that time" suggests the same.  (*Id*. ¶ 27).[10]  In other words, "any estimate about how long the [repair] process might take Plaintiff is mere speculation. . . . Indeed, if Plaintiff's car is repaired quickly with minimal inconvenience, it is difficult to conceive of how Plaintiff will suffer an injury sufficient to confer Article III standing."  *Singletary*, 2024 WL 1431222, at *3.  Plaintiff's allegations regarding the time he expects to spend tending to the recall therefore cannot confer upon him Article III standing.

### IV.      CONCLUSION

Plaintiff's claims are each **DISMISSED** *without prejudice* for lack of subject matter jurisdiction, as the Court finds that it lacks standing over Plaintiff's claims.  Accordingly, the Court declines to address Defendant's remaining arguments with respect to Plaintiff's substantive allegations.  *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155–56 (3d Cir. 1997) ("If a court then determines that it lacks subject matter jurisdiction, it cannot decide the case on the merits.  It has no authority to do so.").  An appropriate Order accompanies this Opinion.

---

[10]      As noted *supra*, Plaintiff does not allege when he "attempted to have his battery repaired" or by whom, (*see generally* Compl.), although the Recall Report notes that Defendant estimate[ed] "the start date for repairs to 2025-03-20." (Ex. 1 at 5).

13

_s/Esther Salas_
**Esther Salas, U.S.D.J.**

14